UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

RICHARD W. DAUPHIN,

            Plaintiff,

-against-

CROWNBROOK ACC LLC,

            Defendant.

----------------------------------------------------------------X

12-CV-2100 (ARR)(SMG)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

MEMORANDUM AND
ORDER

ROSS, United States District Judge:

Plaintiff Richard W. Dauphin ("plaintiff") is a former member of defendant Crownbrook ACC LLC ("defendant" or "the LLC"). When plaintiff relinquished his membership, he and defendant executed a promissory note whereby defendant promised to pay $1.25 million for plaintiff's membership interest. Following plaintiff's withdrawal as a member, he remained an employee of the LLC under a separate employment agreement. After making three quarterly payments contemplated by the promissory note, defendant defaulted on the fourth payment. Plaintiff then terminated his employment. Defendant continued to default on subsequent payments, and plaintiff brought suit. He now moves for partial summary judgment. Defendant raises two affirmative defenses: First, defendant argues its obligations under the note were discharged by plaintiff's termination of the employment agreement. Second, defendant argues that New York law prevents it from paying because the LLC is insolvent. Neither argument persuades. Accordingly, for the following reasons, plaintiff's motion for partial summary judgment is granted.

1

## BACKGROUND

The following facts are undisputed: Prior to September 2010, plaintiff owned a membership interest in defendant Crownbrook ACC LLC. Pl.'s Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s Facts") ¶ 1. Pursuant to an employment agreement executed on March 26, 2007 ("2007 employment agreement"), plaintiff also served as an employee of the LLC. Id., Ex. A, at 1. On September 7, 2010, plaintiff and defendant entered into a letter agreement whereby plaintiff agreed to sell his membership interest in the LLC to defendant for a purchase price of $1.25 million. Id. The letter agreement contemplated that on the closing date, several events would occur, including: (1) plaintiff would "transfer and assign his entire Interest" in the LLC to defendant, id.; (2) in exchange, defendant would execute a promissory note, agreeing to pay $1.25 million in twelve quarterly installments of $104,166.66, the first to be paid on the closing date, id.; (3) the 2007 employment agreement would be terminated and a new employment agreement would commence, id., at 3. The closing date was to occur "on the earlier of (x) March 26, 2011 and (y) 30 days following the termination of the [2007] Employment Agreement." Id., at 1; see Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Def.'s Mem.") 6.

On March 26, 2011, the parties executed the promissory note. Pl.'s Facts ¶ 3. As contemplated in the letter agreement, the promissory note provided: "Principal payments under this promissory note (this "Note") shall be made in twelve (12) consecutive quarterly principal installments of $104,166.66 commencing March 26, 2011, with the final such installment to be

due and payable on December 26, 2013." Id. ¶ 5; Ex. B, at 1.[1] The note did not specifically mention the new employment agreement, though it referenced other agreements between plaintiff and defendant. Id. at 2.

On the same day, the parties executed the new employment agreement ("2011 employment agreement"). Id., Ex. C, at 1. The 2011 employment agreement referenced that defendant had delivered the promissory note to plaintiff. Id. at 1. The 2011 employment agreement also set as its termination date "the date on which the remaining unpaid principal amount under the Note is zero" or "the termination of [plaintiff's] employment pursuant to this Agreement." Id. at 3. The agreement then went on to describe plaintiff's compensation and benefits for his employment. Id., at 3-4. The agreement permitted defendant to terminate plaintiff at will, under which circumstance plaintiff would be entitled to a cash lump sum payment for any salary earned but not yet paid (the "Compensation Payment"). Id. at 4-5. In the event of voluntary termination by plaintiff, section 6.4 of the agreement contemplated the following (referring to plaintiff as "Executive" and defendant as "the Company"):

> In the event that Executive's employment is terminated . . . by Executive for any reason . . . prior to the Termination Date, Executive shall only be entitled to receive the Compensation Payment. The Compensation Payment shall be paid to Executive in a single lump sum on the 30th day following such termination of Executive's employment. Executive shall not be entitled to any other payments or

---

[1] The note also provided that, in the event that a principal payment was not made in full on the due date,

> interest on the unpaid principal amount that was due and payable shall accrue from the date that such principal amount was due and payable until such amount is paid in full at a rate per annum equal to the rate per annum published by The Wall Street Journal from time to time as its prime rate.

Id., Ex. B, at 1.

3

> benefits from the Company. After the termination of Executive's employment under this Section 6.4, the obligations of the Company under this Agreement to make any further payments, or provide any benefits herein, to Executive shall thereupon cease and terminate.

Id. at 6.

Following the execution of the note and 2011 employment agreement, defendant made three installment payments under the note. Pl.'s Facts ¶ 6. However, on December 26, 2011, defendant did not pay the fourth installment. Id. ¶ 7. The following February, plaintiff terminated his employment with defendant. Id. ¶ 13. Defendant thereafter made no further payments on the note. Id. ¶¶ 8-10; see Def.'s Mem. 3; Statement of Disputed Facts Pursuant to Local Civil Rule 56.1(b) ("Def.'s Facts") ¶¶ 8-10.

Plaintiff brought suit in this court seeking damages for the unpaid installments. Dkt. #1, at 2-4. Defendant's first amended answer, Dkt. #13, raised several affirmative defenses, including arguing that it was "prohibited from redeeming or purchasing its own membership interests," id. ¶ 25, by New York Business Corporation Law § 513 because defendant "is either insolvent or, should defendant be compelled to make the payments set forth in the complaint, which represent the consideration for the purchase by the defendant of its own membership interests, defendant will be made insolvent," id. ¶ 26.[2] With respect to this affirmative defense, plaintiff moved for summary judgment, arguing that defendant is an LLC, not a corporation, and is therefore not subject to the Business Corporation Law. Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. 9-12. Defendant opposed summary judgment, arguing, inter alia, that the Business Corporation Law either applies by analogy, or defendant is prohibited from making payments

---

[2]Defendant also raised counterclaims in its first amended answer. Id. ¶¶ 31-62.

under similar provisions of New York's Limited Liability Company Law. Def's Mem. 10-12. In his reply brief, plaintiff disputed these legal claims and also pointed out that defendant had not produced any evidence to support its claim of insolvency. Pl.'s Reply Mem. of Law in Supp. of Mot. for Summ. J. 7-11.

After the motion was fully briefed, defendant sent the court a fax, Dkt. #39, at 1-2, calling plaintiff's argument about lack of evidence of insolvency "preposterous" and stating, "[h]ad the motion papers called for it, defendant would have submitted . . . financial statements." Id. at 2. Defendant requested leave of the court to submit financial statements under seal. Id. Plaintiff responded that the motion was fully briefed and no further submissions should be permitted. Id. at 3. In light of defendant's fax, Chief Magistrate Judge Steven M. Gold held a conference to discuss any additional discovery required for the motion. Judge Gold permitted defendant to submit a supplement to its opposition under seal, with the understanding that the court might order unsealing to the extent the submission formed the basis for a judicial ruling. Dkt. #35. Defendant thereafter filed a supplemental affidavit of David Krinsky, along with financial documents filed under seal. Dkt. #36.[3] With Judge Gold's permission, plaintiff filed a sur-reply. Dkt. #38.

## DISCUSSION

I.  *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[3]In a related order released today, I ordered the affidavit and financial documents unsealed.

Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment against it, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998); accord Celotex Corp., 477 U.S. at 324 (if moving party shows absence of a genuine issue of material fact, nonmoving party must "go beyond the pleadings" and identify facts that show a genuine issue for trial).

"Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense-on which the defendant bears the burden of proof at trial-a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (alterations in original) (internal quotation marks omitted). "While whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" Id. (quoting Celotex Corp., 477 U.S. at 323) (emphases in original). "After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial." Id. at 54-55 (alteration in original) (internal quotation marks omitted).

II.  *Interpretation of the Contract*

Defendant argues that the sentence in section 6.4 of the 2011 employment agreement, "Executive shall not be entitled to any other payments or benefits from the Company," Pl.'s Facts, Ex. C, at 6, references payments under the note. Alternatively, defendant argues that the sentence is ambiguous, thus precluding summary judgment for plaintiff. Moreover, the sentence is followed by, "After the termination of Executive's employment under this Section 6.4, the obligations of the Company under this Agreement to make any further payments, or provide any benefits herein, to Executive shall thereupon cease and terminate." Id. Therefore, according to

defendant, the first sentence cannot reference payments only under the employment agreement, because such a reading would render the second sentence superfluous.

Under New York law, "the initial question for the court on a motion for summary judgment with respect to a contract claim is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (quoting Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002)). "The matter of whether the contract is ambiguous is a question of law for the court." Id. Where the parties dispute the meaning of particular contract clauses, the task of the court is "to determine whether such clauses are ambiguous when 'read in the context of the entire agreement.'" Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir.1993) (quoting W.W.W. Assoc., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990)). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989), unless each is a "reasonable" interpretation, Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992). "Thus, the court should not find the contract ambiguous where the interpretation urged by one party would 'strain [ ] the contract language beyond its reasonable and ordinary meaning.'" Law Debenture Trust Co., 595 F.3d at 467 (alteration in original) (quoting Bethlehem Steel Co. v. Turner Constr. Co., 141 N.E.2d 590, 593 (N.Y. 1957)). "As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties." Hunt Ltd., 889 F.3d at 1277.

While an interpretation of the contract that has the effect of rendering a clause superfluous is "not preferred and will be avoided if possible," Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988), even in such a case, the court must not "alter the plain terms of an agreement or . . . strain language beyond its reasonable and ordinary meaning." Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124 (2d Cir. 2003) (citing Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)).

Applying these principles to the contract at issue, it is plain that the payments mentioned in section 6.4 of the 2011 employment agreement refer solely to payments under the employment agreement itself, not to payments under the note.

First, read in context of the entire 2011 employment agreement, the references to payments in section 6.4 are clearly limited to payments under the employment contract. Section 6.1, which permits defendant to terminate plaintiff at will, provides that in such a situation, plaintiff will be paid a severance package of his base salary and benefits, in addition to the "Compensation Payment." Pl.'s Facts, Ex. C, at 5. By contrast, section 6.4 provides that if plaintiff terminates the agreement, he will be entitled only to the "Compensation Payment," and, by implication, not to the severance package. Id. at 6. The employment agreement nowhere states that payments under the note are subject to fulfillment of the entire term of the employment agreement. Instead, the note is mentioned merely in the preliminary recitals, as providing consideration for plaintiff's membership interest in the LLC. Id. at 1. The recitals also make clear that the employment agreement is entered into "in order to induce Executive to continue to serve as the Vice President, and Head[] of Sales and Marketing for the Company." Id. Thus, the "expressed intention[] of the parties," Hunt Ltd., 889 F.3d at 1277, was to enter into an

9

agreement, wholly separate from the promise to pay under the note, exchanging continued employment for certain compensation and benefits.

Second, the last sentence of section 6.4, referring to payments under the employment agreement, is not superfluous of its preceding sentence, but rather serves to explain it with greater specificity. "Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons." 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 32:6 (4th ed.). "The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings." Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961). Under the principle of noscitur a sociis, the meaning of unclear words in a contract "may be gleaned by reference to other words associated with them." 11 Williston & Lord, supra, § 32:6. Applying that principle here, "payments" in the first sentence plainly means payments under the employment agreement, as explained in the second sentence. Such a reading does not render the second sentence superfluous.

Third, it is inconceivable that plaintiff would have agreed to make receipt of payments under the note contingent on his continuing employment with defendant. The note was executed in exchange for plaintiff's membership interest in the LLC, which the parties determined was worth $1.25 million. The 2011 employment agreement retains plaintiff as an employee at a rate of $60,000 per annum, plus benefits. Pl.'s Facts, Ex. C, at 3. It is terminable at will by either party. It strains credulity to suppose that plaintiff would be willing to forego not just the $60,000 salary, but possibly over $1 million that he was owed for relinquishing his membership interest, in the event that the employment relationship did not continue. The reading of the contract that

defendant urges therefore strains the contract language "beyond its reasonable and ordinary meaning," Law Debenture Trust Co., 595 F.3d at 467 (internal quotation marks omitted), and would undermine the parties' intent in forming the contract.

Finally, the promissory note itself makes no reference to the employment agreement. At most, the note states that it is being issued in connection with the letter agreement (though it refers to the letter agreement as having been executed in July, not September, 2010). Id., Ex. B, at 2. But the letter agreement contemplated only that the parties would enter into a new employment agreement on the closing date, id., Ex. A, at 3; it made no reference to defendant's obligation under the note being tied in any way to the terms of that new employment agreement.[4] Accordingly, even if the language regarding payments in the employment agreement were ambiguous (which it is not), the note itself unambiguously creates an obligation to pay that is not dependent on fulfillment of the employment agreement. Cf. Int'l Multifoods Corp., 309 F.3d at 88 & n.7 ("Resort to extrinsic evidence bearing on the intent of the parties" is appropriate only where ambiguities exist within a contract).

---

[4]Defendant argues that the letter agreement "clearly links the obligation of Defendant to redeem Plaintiff's interest with Plaintiff's employment status with Defendant." Def.'s Mem. 5. Defendant points to the fact that

> the letter agreement provides that the obligation of Defendant to redeem Plaintiff's interest is triggered upon "the earlier of (x) March 26, 2011 and (y) 30 days following the termination of the Employment Agreement other than (i) for Cause (as defined in the Employment Agreement), [or] (ii) as a result of Mr. Dauphin's breach of voluntary termination of the Employment Agreement . . . ."

Def.'s Mem. 5-6 (quoting id., Ex. A, at 1). However, defendant concedes that the employment agreement referenced in this provision is the 2007 employment agreement, which was terminated upon execution of the note. Consequently, this paragraph provides no link between the note and the 2011 employment agreement.

11

The unambiguous terms of the contract thus support plaintiff's motion for partial summary judgment.

III. *Defendant's Insolvency Defense*

Defendant argues that even if payment is required under the note, defendant cannot satisfy its obligations to pay because it is insolvent. Defendant cites New York Business Corporation Law § 513, which prohibits redemption of shares by a corporation when the corporation is insolvent or such redemption would render the corporation insolvent. See N.Y. Bus. Corp. L. § 513(a). Defendant cites, in the alternative, New York Limited Liability Company Law § 508, which provides:

> A limited liability company shall not make a distribution to a member to the extent that, at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their membership interests and liabilities for which recourse of creditors is limited to specified property of the limited liability company, exceed the fair market value of the assets of the limited liability company . . . .

N.Y. Ltd. Liab. Co. L. § 508(a). In its supplemental opposition, defendant presents the affidavit of David Krinsky, principal member of Crownbrook Acquisition II LLC, which is the principal member of defendant. Supplemental Affirmation of David Krinsky in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Krinsky Aff.") ¶ 1. Krinsky states, "I have personal knowledge of the facts set forth herein." Id. He then states, "Annexed hereto as Exhibit A are copies of financial statements produced on August 22, 2012 to Dauphin's counsel." Id. ¶ 2. The financial statements purportedly include "audited balance sheets for 2009 and 2010" as well as "unaudited balance sheets for 2011 and the first quarter of 2012" that show, according to Krinsky, that during those periods, "Crownbrook [ACC LLC]'s liabilities exceeded the fair market value of its

12

assets." Id. ¶ 3. Krinsky also states that the balance sheet for 2011 and the first quarter of 2012 contains a mistake, insofar as a liability categorized as "Due to Member" should instead read "Due to Related Party." Id. ¶ 4.[5]

Krinsky's affidavit and the annexed financial statements are insufficient "to support an essential element of [the] affirmative defense," Giammettei, 34 F.3d at 54; namely, that defendant is, in fact, insolvent. "It is well settled that the 'burden is on the corporation to establish that, at the time the payments were to be made . . . , it lacked the necessary surplus to make the payments or would thereby be rendered insolvent.'" Rehberger v. MRW Grp., Inc., No. 05-CV-0210 (JS)(MLO), 2008 WL 919665, at *2 (E.D.N.Y. Mar. 31, 2008) (alteration in original) (quoting La Sorsa v. Algen Press Corp., 841 N.Y.S.2d 716, 718 (App. Div. 1984)); accord Nakano v. Nakano McGlone Nightingale Adver., Inc., 377 N.Y.S.2d 996, 1000 (Sup. Ct. 1975)). When a party against whom summary judgment is sought raises an affirmative defense, the court will draw all reasonable inferences in the party's favor, but "it will not permit [the party] to 'rely on mere conculsory allegations nor speculation, but instead' will require [the party] to 'offer some hard evidence showing that [its] version of the events is not wholly fanciful.'" In re Livent, Inc. Noteholders Sec. Litig., 355 F. Supp. 2d 722, 729 (S.D.N.Y. 2005) (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)). "[O]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, . . . drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense." E. Sav. Bank,

---

[5]Krinsky does not identify the related party in question, describing it only as "another entity of which I am a member, and not . . . [Crownbrook Acquisition II LLC]," id. ¶ 4.

13

FSB v. Rabito, No. 11-CV-2501 (KAM), 2012 WL 3544755, at *3 (E.D.N.Y. Aug. 16, 2012) (quoting Frankel v. ICD Holdings S.A., 930 F. Supp. 54, 65 (S.D.N.Y. 1996)). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). "If the evidence [proffered by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

Here, defendant has adduced no evidence that would support its affirmative defense or create a genuine issue of fact to defeat plaintiff's motion for summary judgment. Although Krinsky professes to have personal knowledge "of the facts set forth" in his affidavit, he makes no representation that he verified the accuracy of any of the figures itemized in the financial documents. He does not even declare that the financial statements annexed to his affidavit are true and correct copies of financial statements for defendant – merely that they are "copies" produced to plaintiff's counsel well after the relevant time periods. There is no suggestion that Krinsky has any personal knowledge that would relate to the contents or the accuracy of the financial statements, or that he would be competent to testify about such matters at trial. Cf. Fed R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (same). Defendant has thus failed to introduce admissible evidence to establish its insolvency – an essential element of the affirmative defense.

Even if the evidence were admissible, however, it is not probative. Contrary to Krinsky's affidavit, the financial statements provided are plainly <u>unaudited</u>, and have, at best, been subject

14

to a "review" by an accounting firm, which expressly disclaimed its ability to express an opinion regarding the financial statements. Dkt. #36-1, at 6; see Frankel, 930 F. Supp. At 65-66 (holding that "review" of balance sheets, which was not an audit and expressed no opinion as to accuracy of balance sheets, was insufficient factual basis to establish affirmative defense of fraud). In addition, Krinsky himself admits that the financial documents "mischaracterize[]" at least one line item, Krinksy Aff. ¶ 4, further calling into question their accuracy.[6]

Defendant has therefore failed to adduce any admissible evidence of insolvency, and the evidence it has presented through the Krinsky affidavit and the annexed financial statements does not support defendant's claim of insolvency. Moreover, the court has afforded defendant ample opportunity to support its affirmative defense. After defendant produced no affirmative evidence of insolvency in its opposition to plaintiff's partial summary judgment motion, Judge Gold gave defendant another chance to support its claim. See Dkt. #37. As discussed, in its supplemental opposition, defendant failed again to support its contentions with any affidavit claiming personal knowledge of the relevant facts, let alone the "hard evidence," In re Livent, Inc. Noteholders Sec. Litig., 355 F. Supp. 2d at 729 (internal quotation marks omitted), required to support an affirmative defense. Defendant has already had two bites at the apple; it does not deserve a third.

---

[6] The court notes that this supposed mischaracterization may actually be dispositive of the affirmative defense. Krinsky claims that a $4 million liability that is listed as "Due to Member" should actually be listed as "Due to Related Party." This is important because, if the liability were due to a member on account of his membership interest, such liability would not be counted as a liability under N.Y. Ltd. Liab. Co. L. § 508 (prohibiting redemption when liabilities "other than liabilities to members on account of their membership interests" exceed assets). Given that this is the single largest liability on the balance sheet for 2011, without which defendant's liabilities could not possibly exceed its assets, it is convenient indeed that this item is, according to Krinsky, mischaracterized.

Because there is "an absence of evidence to support an essential element" of the affirmative defense – namely, defendant's insolvency – there is no genuine issue of material fact with respect to this defense. Giammettei, 34 F.3d at 54; see Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 713 (2d Cir. 1991) (summary judgment appropriate where non-movant failed to make a showing sufficient to establish insolvency). Accordingly, plaintiff is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted. Entry of judgment is deferred pending resolution of defendant's counterclaims.

SO ORDERED.

s/Allyne R. Ross
_____
Allyne R. Ross
United States District Judge

Dated: April 10, 2013
      Brooklyn, New York